**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DYCARIOUS DEMONTE ROBINSON,

       Petitioner,                Civil No. 2:15-CV-13206
                                HONORABLE NANCY G. EDMUNDS
v.                           UNITED STATES DISTRICT JUDGE

SHANE PLACE,

       Respondent,
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Dycarious Demonte Robinson, ("Petitioner"), incarcerated at the Baraga Maximum Correctional Facility in Baraga, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for first-degree felony murder, M.C.L.A. 750.316(1)(b); armed robbery, M.C.L.A. 750.529; and carjacking, M.C.L.A. 750.529a. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court, in which he was tried jointly with co-defendant DeShawn Jenkins. Mr. Jenkins was acquitted of all the charges. Petitioner was convicted of the above charges and acquitted of a felony-firearm charge. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

The victim was shot and killed outside a home on Fordham Street in Detroit.

1

One eyewitness [Christopher Woodard]—who was murdered before trial—testified [1] that the victim was driving down the street when Demetrius "Meech" Randall flagged him down. Randall and defendant then entered the SUV with the victim. The witness heard a gunshot, and then saw defendant and Randall exit the SUV. A van pulled up, and Randall and another man dragged the victim out of the SUV. Randall took the victim's keys and wallet and then drove off in the victim's car, with the van following behind. The victim was left on the street bleeding heavily from his right side. A couple of hours later, Randall reappeared and asked the witness to hold onto a gun, which the witness did for a few hours before returning it to Randall.

Another eyewitness [Cierra Northern]—who disappeared and could not be located before trial—was in an upstairs apartment across the street when she heard a noise that sounded like a pop. [2] Thinking someone had hit her car, she ran to the window and saw that there was commotion around a SUV truck in the street. She witnessed three or four black men fighting with a white man, the victim, inside of the SUV. The victim was being pulled from the SUV, and the witness noticed that he looked hurt and was bleeding from his right side. The perpetrators then got into the victim's car and drove away, with a van following. The victim was left in the street, attempting to walk, and trying to scream for help. The witness called 911 and later identified defendant, Randall, and Deshawn Jenkins as perpetrators, although she could not identify what role each man played in the murder. Randall's mother testified that defendant confessed that he shot the victim.

The victim died from his gunshot wounds.

*People v. Robinson*, No. 312794, 2014 WL 860344, at *1 (Mich. Ct. App. Mar. 4, 2014).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 497 Mich. 868 (2014).

Petitioner seeks habeas relief on the following grounds:

I. Having a single jury decide the cases against both defendant Robinson and co-defendant Jenkins was reversible error.

II. The trial court violated the Defendant's constitutional rights to confrontation

---

[1] This witness's preliminary examination testimony was read into the record at trial. (Footnote original).

[2] This witness's preliminary examination testimony was read into the record at trial. (Footnote original).

2

and reversibly erred in admitting the prior testimony of Cierra Northern where the prosecutor had not demonstrated that due diligence had been used to try to produce this witness at trial and thus it was not shown that this witness was unavailable.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

3

(2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.  A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III.  Discussion

### A.  Claim # 1.  The severance claim.

Petitioner contends that the trial court erred in failing to grant his motion for a separate trial.

A criminal defendant is not entitled to a separate trial merely because he or she might have had a better chance for acquittal in a separate trial, *Zafiro v. United States*, 506 U.S. 534, 540 (1993), nor does a criminal defendant have a right to a separate trial merely because the defendant and the co-defendant present antagonistic defenses. *Stanford v. Parker,* 266 F. 3d 442, 458 (6th Cir. 2001); *See also United States v. Vinson*, 606 F. 2d 149, 154 (6th Cir. 1979)("Absent some indication that the antagonism between co-defendants mislead or confused the jury, the mere fact that co-defendants blame each other does not compel severance").  The Supreme Court, in fact, has indicated that "[M]utually antagonistic defenses are not prejudicial *per se.*" *Zafiro v. United States,* 506 U.S. at 538.  A court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.  A habeas petitioner who

4

seeks habeas relief on the basis of a state trial court's failure to sever his or her trial from his or her co-defendant's trial bears a very heavy burden. *Stanford v. Parker,* 266 F. 3d at 459.   Joinder of defendants for trial is the preferred course, which creates a presumption in favor of joinder which must be overcome by the party seeking severance. *See Foster v. Withrow,* 159 F. Supp. 2d 629, 641 (E.D. Mich. 2001).

Petitioner first argues that he was entitled to a separate trial because he and his co-defendant Jenkins had mutually antagonistic defenses.

Antagonistic defenses occur "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris,* 9 F. 3d 493, 501 (6th Cir. 1993).   Mr. Jenkins did not point the finger at petitioner or otherwise accuse him of the crime but merely argued that he was not himself present when the crime was committed. Petitioner's defense at trial was that he was merely present during the carjacking and murder and did not intend to participate in the crimes.   Petitioner has failed to show that his defense and Jenkin's defense were mutually antagonistic or irreconcilable.   The jury still could have believed either theory based on the evidence presented. *See United States v. Carter*, 760 F.2d 1568, 1574 (11th Cir. 1985)(alibi defense and mere presence defense to drug conspiracy charges not irreconcilable).

Petitioner next contends that his Sixth Amendment right to confrontation was violated by being tried jointly with Mr. Jenkins for two reasons.

First, petitioner contends that his confrontation rights were violated by the admission of Mr. Jenkins' statement to the police, because Mr. Jenkins did not testify at trial.

Where a co-defendant's incriminating confession is admitted at a joint trial and the

5

co-defendant does not take the stand, a defendant is denied the constitutional right of confrontation, even if the jury is instructed to consider the confession only against the co-defendant. *Bruton v. United States*, 391 U.S. 123, 127-128 (1968).  The *Zafiro* Court specifically recognized that a potential *Bruton* violation could require severance. *Zafiro*, 506 U.S. at 539.

The Michigan Court of Appeals rejected petitioner's claim, because Jenkins' statement did not did not implicate petitioner but only identified an unknown person who was involved in Jenkins's drug dealings. *People v. Robinson*, 2014 WL 860344, at * 5.

No *Bruton* violation results where a co-defendant's statement does not expressly implicate a defendant in the charged offense because such a statement would not be "powerfully incriminating." *Richardson v. Marsh,* 481 U.S. 200, 208 (1987); *Vincent v. Parke*, 942 F. 2d 989, 991 (6th Cir. 1991).  Jenkins statement did not mention petitioner by name or even indirectly alluded to him.  Because Jenkins' out-of-court statement did not expressly incriminate petitioner, the failure to sever petitioner's trial did not prejudice petitioner. *See Clark v. O'Dea,* 257 F. 3d 498, 504 (6th Cir. 2001)(citing *United States v. Sherlin,* 67 F. 3d 1208, 1215 (6th Cir. 1995)).

Petitioner further contends that the joint trial violated his right to confrontation because Ms. Cierra Northern's testimony from Mr. Jenkins' separate preliminary examination was admitted at their joint trial.

A federal district court on habeas review of a state court conviction can proceed directly to a harmless error analysis of a habeas petitioner's claims without first reviewing the merits of the claim or claims, "when it is in the interest of judicial economy and brevity to do so." *Dittrich v. Woods*, 602 F. Supp. 2d 802, 809 (E.D. Mich. 2009); *aff'd in part and*

6

*rev'd in part on other grds,* 419 Fed. Appx. 573 (6th Cir. 2011). A Confrontation Clause error is subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the following factors: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." *See Jensen v. Romanowski,* 590 F. 3d 373, 379 (6th Cir. 2009).

Assuming that the admission of Ms. Northern's testimony from the co-defendant's preliminary examination violated petitioner's right to confrontation, any error was harmless. First, Ms. Northern did not implicate petitioner in the carjacking or murder at Mr. Jenkins' preliminary examination. Ms. Northern's testimony from petitioner's preliminary examination was also read into the record. Ms. Northern expressly indicated at petitioner's preliminary examination that petitioner was involved in the carjacking and murder. Mr. Woodard's testimony from petitioner's preliminary examination also expressly incriminated petitioner. Ms. Randall testified at trial that petitioner confessed to shooting the victim.

The erroneous admission of Ms. Northern's testimony from the co-defendant's preliminary examination did not have an injurious effect on the fundamental fairness of the

7

trial, where there was ample evidence besides this testimony upon which to base petitioner's conviction, and the verdict would not have been different had this testimony been excluded. *See Ford v. Curtis,* 277 F. 3d 806, 810 (6th Cir. 2002). Petitioner is not entitled to relief on his severance claim because the admission of Ms. Northern's testimony from Mr. Jenkins' preliminary examination was harmless error. *See Herd v. Kincheloe*, 800 F.2d 1526, 1529 (9th Cir. 1986). Petitioner is not entitled to relief on his first claim.

**B. Claim # 2. The unavailable witness testimony claim.**

Petitioner contends that his Sixth Amendment right to confrontation was violated when the trial court permitted Ms. Northern's testimony from petitioner's preliminary examination to be admitted into evidence, when there was no showing that the police or prosecutor acted with due diligence to locate her prior to trial.

The Michigan Court of Appeals rejected petitioner's claim:

In the instant case, defendant contends that the prosecution failed to demonstrate due diligence in locating the missing witness. However, the police officer in charge of the investigation made repeated attempts to locate the witness. He maintained contact with the witness until approximately two weeks before trial, when the witness called and informed him that the other eyewitness had been murdered, and that she was concerned about testifying. The officer told her that he would look into the matter and call her back.

The officer called the witness's cellular telephone several times after that conversation, but she did not answer. He had two addresses for her: one at the apartment from which she witnessed the murder in Detroit, Michigan, and the other in Warren, Michigan. The officer went to the Detroit address and spoke with residents in the area who considered themselves her "cousins." The officer left his business card at this address. He also enlisted the assistance of the Detroit Fugitive Apprehension Team (DFAT), the Ninth Precinct, and the headquarter surveillance unit, who assisted in searching for the witness around the area. The officer also ran a LEIN [Law Enforcement Information Network] check searching for warrants and

checked with the Secretary of State to see if the witness had changed her address.  He also checked with the morgue in Wayne County and hospitals in Detroit.

Defendant, however, contends that the bulk of the officer's efforts took place in and around the Detroit address, and that the search effort in Warren was inadequate.  That argument is meritless.  First, the officer's attempts through the Secretary of State would have revealed where the witness lived even if not in Detroit.  Second, the officer's discussions with the witness's "cousins" were an attempt to locate her no matter where she resided.  Moreover, the officer visited the Warren address and left his contact information.

Defendant also alleges that the officer should have begun his search earlier.  Yet, at the due diligence hearing, defendant stated: "I don't really think that timeliness is an issue."  As this Court has recognized, "[a] party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court."  Moreover, defendant's argument assumes that the officer knew the witness would fail to appear the first day of trial.  While defendant posits that the officer knew the witness was reluctant to testify after learning about the murder, the officer testified that the witness had been hesitant from the beginning, but had still showed at the preliminary examination.  Further, the officer did engage in repeated attempts to contact the witness after she called and informed him about the other witness's murder.

*People v. Robinson*, 2014 WL 860344, at *2-3 (internal citation and footnote omitted).

When prosecutors seek to admit a non-testifying witness' preliminary hearing testimony, the Confrontation Clause requires two things: first, the prosecution must establish that the declarant is "unavailable" by showing that prosecutorial authorities have made a good-faith effort to obtain the declarant's presence at trial, and, second, to satisfy the "indicia of reliability" requirement, the prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine the declarant at the preliminary examination. *See Pillette v. Berghuis,* 630 F. Supp. 2d 791, 804 (E.D. Mich. 2009); *rev'd on other grds,* 408 Fed. Appx. 873 (6th Cir. 2010); *cert. Den.* 132 S.Ct. 125 (2011)(citing *McCandless v. Vaughn*, 172 F. 3d 255, 265 (3rd Cir. 1999)).

9

The Michigan Court of Appeals reasonably determined that the prosecutor and the police had made good faith efforts to secure Ms. Northern's presence at petitioner's trial. Ms. Northern had shown up at the preliminary examination. The officer in charge of the investigation repeatedly called Ms. Northern, attempted to locate her at both of her addresses, left his contact information, spoke with her "cousins," checked with the Secretary of State and on the LEIN system, checked the county morgue and several hospitals, and sought the assistance of several other law enforcement agencies.

"A good-faith effort...is not an ends-of-the-earth effort, and the lengths to which the prosecution must go to obtain a witness generally amount to a question of reasonableness." *United States v. Cheung*, 350 Fed. Appx. 19, 23 (6th Cir.2009)(internal quotation marks, citations, and alterations omitted). The Court concludes that the prosecution and law enforcement made a good faith effort to locate Ms. Northern and present her at trial. *See Winn v. Renico,* 175 Fed. Appx. 728, 739 (6th Cir. 2006); *See also Pillette,* 630 F. Supp. 2d at 804.

In addition, Ms. Northern's former preliminary examination testimony bore adequate indicia of reliability because it was made under oath, petitioner and his counsel were present, and the witness was subject to cross-examination. *California v. Green*, 399 U.S. 149, 165-66 (1970); *Pillette,* 630 F. Supp. 2d at 804; *Eastham v. Johnson,* 338 F. Supp. 1278, 1280 (E.D. Mich. 1972). Therefore, the admission of the preliminary examination testimony at petitioner's trial did not violate his right to confrontation. *See Glenn v. Dallman,* 635 F. 2d 1183, 1187 (6th Cir. 1980); *Havey v. Kropp,* 458 F. 2d 1054, 1057 (6th Cir. 1972); *Pillette,* 630 F. Supp. 2d at 804-05. Petitioner is not entitled to habeas relief on his second claim.

10

**C.  The motion for the appointment of counsel is DENIED.**

The Court will deny petitioner's motion for the appointment of counsel.  There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess,* 306 F. 3d 441, 444 (6th Cir. 2002).  Because petitioner's claims lack any merit, the Court will deny petitioner's request for the appointment of counsel. *See Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 788 (E.D. Mich. 2004).

**IV.  Conclusion**

The Court will deny the petition for writ of habeas corpus with prejudice.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).  The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

**IT IS ORDERED**:

(1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) The motion for appointment of counsel [Dkt. # 3] is **DENIED.**

(3) A certificate of appealability is **DENIED.**

(4) Petitioner is **DENIED** leave to appeal *in forma pauperis.*

s/ Nancy G. Edmunds
**HON. NANCY G. EDMUNDS**
UNITED STATES DISTRICT COURT

Dated: May 10, 2016

12